**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SELECTIVE INSURANCE COMPANY OF AMERICA,** | Civ. No. 20-5516 (KM)(JBC) |
| Plaintiff, | OPINION |
| v. | |
| **MAZZUCA ENTERPRISES, INC**, *et al.* | |
| Defendants. | |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on Plaintiff's unopposed motion (DE 12)[1] for default judgment. Plaintiff initiated this action to recover losses stemming from Defendants' alleged breach of their contractual obligations arising under an indemnity agreement. For the reasons provided herein, I will grant Plaintiff's motion.

**I. Discussion**

   **a. Legal Standard**

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984).

---

[1] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"Compl." = Plaintiffs' Complaint (DE 1)

1

Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

### b. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Plaintiff Selective Insurance Company of America initiated this action against Defendants Mazzuca Enterprises, Inc. ("Mazzuca"); M-J Air Inc. a/k/a M-J Air, Inc. ("M-J Air"); Joseph Mazzuca ("Joseph"); Georgia M. Mazzuca, personal representative of the estate of Michael J. Mazzuca ("Estate of Michael"), and Wanda Mazzuca ("Wanda"), (collectively "Defendants").[2] (Compl. at 1-2). The Summons and Complaint were served on June 26, 2020 as to

---

[2] To avoid confusion, I will refer to these relatives by their first names. No disrespect is intended.

Defendant Estate of Michael and on July 6, 2020 as to Defendants Mazzuca, M-J Air, Joseph, and Wanda. (DEs 6-10). The time for Estate of Michael to respond expired on July 17, 2020, and for the rest on July 27, 2020. (*Id.*) On August 21, 2020, Plaintiff requested entry of default (DE 10), which was entered by the clerk on August 24, 2020. Therefore, the prerequisites for default judgment are present.

### c. Three-Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

### i. Factor one: Existence of meritorious defense

As always, evaluation of the first factor is made difficult by Defendants' failure to answer or to oppose the motion for default judgment. Nevertheless, my independent review of the record does not suggest that Plaintiff's claims are legally flawed. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that the Plaintiffs have stated a claim for relief against these Defendants.

On July 2, 2010, Defendants each executed a General Agreement of Indemnity (the "Indemnity Agreement") in favor of Plaintiff for the issuance of bonds on behalf of Mazzuca, as principal. (*Id.* ¶10).

Paragraph 3 of the Indemnity Agreement provides as follows:

> The Indemnitors hereby jointly and severally covenant, promise and agree to exonerate, indemnify and save harmless [Selective](and any surety that [Selective] procures to execute any Bond and any other surety with which [Selective] may act as co-surety on any Bond or other instrument) from and against any and all liability, loss, cost, damage and expense of whatsoever kind or nature, including, but not limited to, interest, court costs and counsel, attorneys, consulting, accounting and other professional

and trade fees, whether incurred on a flat fee per claim, percentage, time and material, hourly or other basis, (including the cost of in-house professionals) which [Selective] may sustain, incur, be put to or to which it may be exposed (1) by reason of having executed any Bond or other instrument or any renewal, modification, continuation, substitution or extension thereof, (2) by reason of the failure of any one or more of the Indemnitors to perform or comply with the promises, covenants and conditions of this Agreement or,(3) in enforcing any of the promises, covenants or conditions of this Agreement. The liability of the Indemnitors shall extend to and include the amount of all payments, together with interest thereon at the rate of prime as published in the Wall Street Journal (or similar national financial publication should the Wall Street Journal cease to public such rates) plus two points from the date of such payments, made by [Selective] under [Selective's] belief that (1) [Selective] was or might be liable therefor or (2) the payments were necessary or advisable to protect any of [Selective's] rights or to avoid or lessen [Selective's] liability or alleged liability. While [Selective] shall be under no obligation to advance or loan money to any Indemnitor, the liability of the Indemnitors shall also extend to any loans or advances, including any interest thereon, made by or guaranteed by [Selective] for the benefit of one of more of the Indemnitors, without any obligation on [Selective's] part to see to the application thereof. Payment by reason of the aforesaid causes shall be made by the Indemnitors to [Selective] at its Home Office in Branchville, New Jersey as soon as liability exists or is asserted against [Selective], whether or not [Selective] shall have made any payment therefor. Indemnitors agree that the vouchers or other evidence of such payments sworn to by a duly authorized representative of [Selective] shall be prima facie evidence of the fact and extent of the liability of the Indemnitors to [Selective].
(*Id.* ¶12) (alterations in original).

And Paragraph 7 of the Indemnity Agreement provides:

[Selective] shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon any of the Bonds procured or executed by it and [Selective's] decision thereon shall be final and binding upon the Indemnitors. [Selective] shall be entitled to apply any collateral security by it under this Agreement or any collateral security agreement between it and any of the Indemnitors to the satisfaction of or in reimbursement of [Selective] as a result of its satisfaction of any claim, demand, suit or judgment upon any of the Bonds procured or executed by it and to direct payment of or reimbursement to itself of interest, costs, expenses and counsel and other professional or consulting fees

> incurred by it as a result of its having executed or procured any Bond. [Selective] shall at all times have the right but not the obligation to retain the counsel and experts of its choice to defend itself from any claim, lien, levy, liability, suit or judgment brought against [Selective] on any Bond or against any job funds or collateral security held by [Selective] or an Obligee on any Bond, including retainages or to prosecute an action to preserve [Selective's] rights with respect to collateral security, contract funds, trust funds or liens on any bonded project and the cost of retaining such counsel and experts shall fall within the Indemnitors' obligation to indemnify, exonerate and hold [Selective] harmless.

(*Id.* ¶13) (alterations in original).

Thereafter, Plaintiff "issued various bonds on behalf of Mazzuca, as principal, in favor of Oliver Township, as obligee." (*Id.* ¶14). Those bonds included Performance Bond No. B1088396 and an associated maintenance bond (together, the "Bonds"). (*Id.*)

On December 19, 2019, Plaintiff issued a check in the amount of $165,000 to Oliver Township to resolve the Township's claims against the Bonds. (*Id.* ¶15). Plaintiff then "incurred unreimbursed loss adjustment expenses in connection with Oliver Township's claims against the Bonds, including but not limited to attorneys' fees and costs and consultant fees and costs." (*Id.* ¶16).

Based on those alleged unreimbursed losses, the one-count Complaint asserts a claim for contractual indemnification. (*Id.* ¶¶17-20). The Complaint alleges that Defendants breached their joint and several contractual obligations under the Indemnity Agreement "by failing to exonerate, indemnify and save harmless" Plaintiff. (*Id.* ¶¶18-19). As a result of that breach, the Complaint alleges, the following losses and expenses remain unsatisfied:

(1) "[A] net loss to date of no less than $165,000";

(2) "[N]o less than $39,365.80 in legal fees and disbursements";

(3) "[N]o less than $6,994.75 in consultants' fees."

(*Id.* ¶20). Added together, these losses total no less than $211,360.55. (They have been supplemented by affidavit. *See infra.*)

The facts as alleged, I find, establish a cause of action for contractual indemnification under the clear terms of the Indemnity Agreement. Paragraph 3 of the Agreement entitles Plaintiff to recover, *inter alia*, any and all costs sustained "by reason of having executed any Bond." (Compl. ¶12). Further, Paragraph 7 provides that Plaintiff "shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon any of the Bonds procedure or executed by it." (*Id.* ¶13). On December 19, 2019, Plaintiff issued payment to Oliver Township to resolve Defendants' claims against the Bonds. (*Id.* ¶15) That settlement left Plaintiff with unreimbursed losses (*Id.* ¶16). Based on those allegations, I find that Plaintiff has stated a valid cause of action under the Indemnity Agreement.

### ii. Factors two and three: Prejudice to Plaintiff and Defendants' culpability

The second and third factors also weigh in favor of default. Defendants were properly served but failed to appear, defend or otherwise respond to the Complaint. It is clear that the Plaintiff has been prejudiced by this dereliction because it has been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (find that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiff[s] will suffer prejudice if the Court does not enter default judgment as Plaintiff[s] [have] no other means of seeking damages for the harm caused by Defendant."). Absent any evidence to the contrary, "the Defendant[s'] failure to answer evinces the Defendant's culpability in [the] default." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023 at *4. In this case, "there is nothing before the Court to show that the Defendant[s'] failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009)) (finding that when there is no evidence that the defendant's failure to

answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, the three factors support the entry of default judgment. Therefore, I will grant the motion (DE 12) for default judgment.

### d. Remedies

The Complaint alleges damages of at least $211,360.55. (Compl. ¶20). In support of that figure, Plaintiff has submitted documentation of the $165,000 check it issued to Oliver Township. (DE 1-3). Additionally, Plaintiff has submitted the Affidavit of Jonathan L. Panico, which states that, as of February 9, 2021, Plaintiff has incurred at least $49,325.58 in attorneys' fees and costs and $7,519.75 in consultants' fees and costs. (DE 12-1 ¶13). Based on that more recent figure, judgment will be entered in the amount $221,845.33.

## II. Conclusion

For the reasons set forth above, I will grant Plaintiff's motion (DE 12) for default judgment in the amount of $ 221,845.33.

An appropriate order follows.

Dated: April 26, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**